746 N.W.2d 707 (2008)
16 Neb. App. 565
Rhonda L. GEBHARDT, Appellant
v.
John O. GEBHARDT, Appellee.
No. A-07-102.
Court of Appeals of Nebraska.
March 11, 2008.
*710 Gregory G. Jensen, P.C., L.L.O., for appellant.
Barry D. Geweke, of Stowell, Kruml, Geweke & Cullers, P.C., L.L.O., Ord, for appellee.
IRWIN, SIEVERS, and MOORE, Judges.
SIEVERS, Judge.
Rhonda L. Gebhardt and John O. Gebhardt were divorced by a decree of dissolution of marriage entered on May 1, 2006, by then District Judge Ronald D. Olberding in the district court for Greeley County, Nebraska. Judge Olberding retired effective April 30. Following the entry of decree, there was a motion for a new trial on May 3 and a ruling thereupon on August 10 by District Judge Mark D. Kozisek. Thereafter, there were a series of motions to alter or amend judgment, rulings thereupon, and finally Rhonda's notice of appeal, which was filed January 23, 2007. These procedural occurrences, which we discuss in further detail below, raise jurisdictional issues which we have previously directed the parties to address in their briefs. We have determined that the matter should be submitted for decision without oral argument pursuant to our authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2006).

PROCEDURAL BACKGROUND
The district court's decree of dissolution of May 1, 2006, was followed by Rhonda's motion for a new trial of May 3. The motion raised issues with respect to the trial court's property division, award of alimony, and failure to award her attorney fees. Judge Kozisek's order on Rhonda's motion for new trial and order modifying decree was entered August 10. Citing Heald v. Heald, 259 Neb. 604, 611 N.W.2d 598 (2000), Judge Kozisek recited in his order the well-known three-step process for property division: (1) to classify the parties' property as marital or nonmarital, (2) to value the marital assets and liabilities, and (3) to calculate and divide the net marital estate.
The trial court found a number of problems with the previous property division, which we will not fully detail other than to set forth the order portion of the ruling, which provided that the motion to set aside the judgment and grant a new trial was overruled, but that the judgment of May 1, 2006, was modified to provide:
"[Rhonda] is awarded all property and ordered to pay all debt listed under the column heading `Rhonda' on the Property Division Worksheet. [John] is awarded all property and ordered to pay all debt listed under the column heading `John' on the Property Division Worksheet.
"[John] shall pay to the court clerk for disbursement to [Rhonda] as property settlement the total sum of $62,000.00 within 60 days of entry of this order. There shall be no interest if paid on or before the due date, but any delinquent payment shall bear interest at the judgment rate of 7.297% per annum from due date until paid."
Otherwise, the trial court left the original decree of dissolution unchanged. This *711 ruling of August 10 changed the May 1 judgment by awarding Rhonda a $62,000 judgment against John which had not previously been part of the decree.
Within 10 days of the August 10, 2006, decision, John filed a motion to alter or amend the order modifying decree so as to eliminate the $62,000 judgment against him and in favor of Rhonda. Additionally, John's motion asserted that the original decree of dissolution of May 1 failed to give him credit for a $384,288.67 cash inheritance and that with said credit, no property settlement judgment against him was warranted.
Rhonda filed a "Cross Motion to Alter or Amend Order Modifying Decree" on October 10, 2006.
By an "Order on Motion to Alter or Amend Order Modifying Decree" entered on November 14, 2006, Judge Kozisek first found that Rhonda's pending cross-motion to alter or amend filed October 10 was filed more than 10 days after the entry of the order modifying decree of August 10, and therefore the court granted John's motion to strike Rhonda's cross-motion to alter or amend as untimely. The trial court then took up John's motion to alter or amend, and after citing authority making inheritances and gifts which are traceable nonmarital property, see Quinn v. Quinn, 13 Neb.App. 155, 689 N.W.2d 605 (2004), the court found that "it incorrectly failed to give John credit for the inheritance and life insurance when it rendered its Order Modifying Decree." The trial court had allowed a credit to Rhonda for her inherited property in the amount of $43,000. However, Judge Kozisek found that there was no evidence adduced which traced such inherited property and that no credit would be allowed for Rhonda's inherited property. Thus, the court ordered that John's motion to alter or amend was granted to the extent of allowing him credit for inherited property and life insurance proceeds in the amount of $384,288.67. The court further ordered:
The judgment previously entered on May 1, 2006 . . . and the Order Modifying Decree entered August 10, 2006 are modified to provide:
"[Rhonda] is awarded all property and ordered to pay all debt listed under the column heading `Rhonda' on the Property Division Worksheet-2. [John] is awarded all property and ordered to pay all debt listed under the column heading `John' on the Property Division Worksheet-2. Neither party shall pay the other money for any property division."
Rhonda was unsatisfied with the above outcome and therefore filed another motion to alter or amend the order modifying decree on November 22, 2006, which was within 10 days of November 14. Such motion was denied by a signed and filed journal entry of December 28, after which Rhonda filed an appeal to this court on January 23, 2007.

JURISDICTIONAL ANALYSIS
[1, 2] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. Saunders County v. City of Lincoln, 263 Neb. 170, 638 N.W.2d 824 (2002). Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. Keef v. State, 262 Neb. 622, 634 N.W.2d 751 (2001).
This appeal raises issues dealing with the tolling effect of a motion to alter or amend, the effect of successive motions to alter or amend, and ultimately, if we have jurisdiction, which actions of the trial court are subject to our appellate review.
*712 Rhonda asserts that because she was satisfied with the order on her motion for new trial of August 10, 2006, she takes "the unusual position of arguing that this Court lacks jurisdiction," provided we determine that the August 10 order is the final order in this case, from which order an appeal needed to be filed within 30 days. Brief for appellant at 1. As we understand Rhonda's jurisdictional argument, it is that only her motion for new trial of May 3 was effective to terminate the running of the 30 days in which to appeal to this court. We note that Rhonda does not assign error to the trial court's ruling of November 14, or its ruling of December 28. However, perhaps we are to infer from Rhonda's argument that she would have us declare the trial court's rulings of November 14 and December 28 nullities. John concludes his briefing by asking us to affirm either the decree of dissolution of May 1 or the order modifying decree of November 14.
[3] Both parties reference Mason v. Cannon, 246 Neb. 14, 516 N.W.2d 250 (1994), for two fundamental propositions: (1) An untimely motion for new trial is ineffectual and does not toll the time for perfection of an appeal, nor does it extend or suspend the time limit for filing such appeal, and (2) the filing of a motion for new trial and its subsequent overruling do not convert an otherwise unappealable order into an appeal-able order. However, Mason was decided before the operative date (April 16, 2004) of the statute providing for the filing of a motion to alter or amend, Neb.Rev.Stat. § 25-1329 (Cum. Supp. 2006). Section 25-1329 requires the filing of such a motion no later than "ten days after the entry of the judgment." And, under Neb.Rev.Stat. § 25-1912(3) (Cum. Supp. 2006), such a motion timely filed terminates the running of the time for filing a notice of appeal "as to all parties." In order to be a tolling motion, a motion to alter or amend must seek substantive alteration of the judgment. See Weeder v. Central Comm. College, 269 Neb. 114, 691 N.W.2d 508 (2005).
Returning to Mason v. Cannon, supra, the trial court entered an order on June 3, 1992, dismissing the case for want of prosecution. The plaintiff, Sandra Mason, did not appeal, but, rather, filed a motion to vacate the order of dismissal and set the matter for trial. The Nebraska Supreme Court, citing Abboud v. Cutler, 238 Neb. 177, 469 N.W.2d 763 (1991), held that a motion to vacate filed within 10 days of an order of dismissal is the equivalent of the filing of a motion for new trial. Mason's motion to vacate was overruled on June 22. The Mason court said that the overruling of the motion to vacate was a final order requiring the filing of a notice of appeal within 30 days of June 22, but that because Mason filed another motion for new trial, dated June 26, 1992, and because successive motions for new trial cannot extend the appeal time, Mason's notice of appeal filed on September 21, after the trial court overruled her second motion for new trial on August 21, was an ineffective notice of appeal and thus the Supreme Court lacked jurisdiction.
Mason is instructive but not determinative of the result in this case, because it did not involve a motion to alter or amend and, most important, the trial court in Mason took no action which altered or changed the judgment between the two motions for new trial filed by Mason. Our situation is substantially different. Perhaps that difference is underscored by recalling exactly what constitutes a judgment, remembering that the motion to alter or amend judgment tolls the appeal time when the motion seeks a substantial alteration of a judgment.
*713 [4] The statutory definition of "judgment" is found in Neb.Rev.Stat. § 25-1301(1) (Cum. Supp. 2006): "A judgment is the final determination of the rights of the parties in an action." To be final, an order must dispose of the whole merits of the case and leave nothing for further consideration of the court, and thus the order is final when no further action of the court is required to dispose of the pending cause. However, if the cause is retained for further action, the order is interlocutory. See Hake v. Hake, 8 Neb.App. 376, 594 N.W.2d 648 (1999), citing Moulton v. Board of Zoning Appeals, 251 Neb. 95, 555 N.W.2d 39 (1996).
[5] Therefore, when reviewing the procedural events of this case sequentially, we begin with the entry of the decree of dissolution of May 1, 2006, by Judge Olberding. That order retained nothing for further action and was clearly a final order within the foregoing definitional parameters. Rhonda's motion for new trial of May 3 is unquestionably a motion which tolls the time in which to appeal the district court's decree. On August 10, the district court ruled on Rhonda's motion for new trial and substantially altered the judgment by adding a $62,000 judgment to the decree in her favor and against John. This decision is unquestionably a judgment, and under the plain language of § 25-1329, a party may seek to alter or amend this judgment, a tactic that John would understandably consider doing before filing an appeal. If such a motion is filed within 10 days of August 10, the time to appeal to this court is tolled until 30 days after the motion to alter or amend is disposed of. John's motion to alter or amend sought to eliminate the $62,000 judgment that had been imposed upon him 8 days earlier in the order of August 10, and he sought to gain credit for his $384,288.67 cash inheritance as a basis to eliminate the obligation to pay Rhonda $62,000, which would be a substantial alteration.
As a result of this "new judgment," John's motion to alter or amend was a tolling motion and had to be disposed of before the 30 days in which to appeal to this court began to run. We digress to note that on October 10, 2006, Rhonda filed a cross-motion to alter or amend the August 10 judgment. This motion to alter or amend was obviously out of time and a nullity, as the trial court found. The trial court then ruled on John's motion to alter or amend in its order of November 14, by removing Rhonda's $43,000 credit for inherited property, which credit was in the original May 1 decree, and by eliminating the $62,000 judgment given to Rhonda by the order modifying decree entered August 10. Thus, the trial court entered a new judgment which again substantially altered the decree, to Rhonda's disadvantage.
On November 22, 2006, within 10 days of the November 14 judgment, Rhonda moved again to alter or amend the judgment, seeking to restore to her the $62,000 property settlement judgment against John. This motion by Rhonda clearly sought substantial alteration of what by now was the third judgment in this case, and thus Rhonda's motion was a tolling motion. Accordingly, when Rhonda's last motion to alter or amend was denied on December 28 with no change in the third judgment, the third judgment became a final, appealable order. As a result, Rhonda's notice of appeal filed on January 23, 2007, was within 30 days of December 28, 2006, and was therefore effective. Therefore, we have jurisdiction of this appeal to conduct appellate review of the final judgment entered in this divorce case, which judgment did not occur until the third attempt at a final order entered on November 14. That order became final with *714 the overruling of Rhonda's motion to alter or amend such judgment on December 28, at which time the 30-day clock in which to appeal began to run.
[6] If Rhonda, instead of filing a notice of appeal within 30 days of December 28, 2006, would have filed another motion to alter or amend attacking the trial court's decision of November 14, the principles of Mason v. Cannon, 246 Neb. 14, 516 N.W.2d 250 (1994), would apply. Because, at that point, she would have filed successive motions to alter or amend the same judgment. However, in this case, her various motions to alter or amend were not "successive" in the sense condemned in Mason. In other words, while successive motions to alter or amend would not toll the time to appeal under the reasoning of Mason, the motions to alter or amend in this case were not "successive," because they were timely filed after the court substantially altered the judgment, giving the parties a statutory right to seek alteration or amendment of the "new judgment" in the trial court before appealing to this court. Therefore, we have jurisdiction over Rhonda's appeal and now proceed to take up her assignments of error.

ASSIGNMENTS OF ERROR
While Rhonda assigns four errors, the foregoing discussion of the jurisdictional issue disposes of Rhonda's fourth assignment of error relating to the district court's ruling that Rhonda's October 10, 2006, cross-motion to alter or amend the August 10 judgment was out of time. We have affirmed the finding that such motion is a nullity. Accordingly, the remaining assignments of error for decision are that (1) the district court erred in using July 22, 2005, as the valuation date for the parties' property; (2) the district court erred in assigning values to marital assets and marital debt; and (3) the district court erred in failing to consider improvements made to inherited property.

STANDARD OF REVIEW
[7] An appellate court reviews a dissolution case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Such standard also applies to the trial court's determinations regarding the division of property. See Longo v. Longo, 266 Neb. 171, 663 N.W.2d 604 (2003).
[8, 9] In its de novo review, an appellate court reappraises the evidence in the record and reaches its own independent conclusions. See McGuire v. McGuire, 11 Neb.App. 433, 652 N.W.2d 293 (2002). However, where the evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See id.
[10] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. Tyma v. Tyma, 263 Neb. 873, 644 N.W.2d 139(2002).

ANALYSIS
As a predicate to the discussion of Rhonda's first two assignments of error, we note that the parties were married in September 1988, four children were born to the marriage, and Rhonda filed for dissolution on July 22, 2005. Both parties are in their forties, John is a farmer-rancher, and since 2000, Rhonda has been a full-time public school teacher.

Valuation Date.
In the early 1990's, the Gebhardts moved to Greeley County to farm. The *715 president of the State Bank of Scotia testified with respect to the Gebhardt family finances. Apparently, in order to secure operating loans, the Gebhardts submitted financial statements around the first of March each year. The bank's president testified from the bank's documentation that a February 12, 2003, financial statement revealed that the Gebhardts had a net worth of $26,580. Their assets were valued at $534,977, against which there was debt of $508,397. Following the death of John's mother, the financial picture materially changed. A financial statement dated August 31, 2004, in the bank's records revealed that at that time, the Gebhardts' net worth was $1,201,000, with total assets of $1,322,000 and total debt of $121,000. The trial court found that this substantial increase in net worth was due to John's inheritance, not from the efforts of the parties, and no claim is made that such finding is erroneous.
[11] Rhonda argues that the trial court improperly used July 22, 2005, the date Rhonda filed for dissolution, as the date to value assets and debts, because such date bore no rational relationship to the assets to be divided, particularly with regard to the crops and the livestock. Given Rhonda's testimony on cross-examination as quoted below, this assignment of error is without merit. The record reveals the following cross-examination of Rhonda:
Q. You do not object to using July 22, 2005 as the date to value assets?
A. I believe, if John is honest, I believe those are okay, yes.
Q. You are okay with using July 22, 2005.
[Objection as calling for a legal conclusion was overruled.]
A. Say it one more time.
Q. Do you agree with using July 22, 2005 as the date to . . . value assets and debt?
A. When I filed?
Q. Yes.
A. Yes.
[12] This testimony brings into play the well-established rule that an issue not properly presented to and passed upon by the trial court may not be raised on appeal. See Beaver Lake Assn. v. Sorensen, 231 Neb. 75, 434 N.W.2d 703 (1989). Additionally, we note that in none of the postdecree motions filed by Rhonda did she raise the issue to the trial court that the July 22, 2005, valuation date was improper. This assignment of error is without merit.

Value of 2005 Corn Crop.
The trial court valued the irrigated corn crop for 2005 at $102,235 and the dryland corn crop at $4,000. With respect to both values, the court found: "While [Rhonda] asks the court to speculate that the value was more, she presented no credible evidence to justify the increase." John's evidence valued the corn crop at $102,235, using a formula of 508 acres at 175 bushels per acre estimated at $2.30 per bushel (including "LDP" money) reduced by "50% of season." Rhonda argues that instead of using the 50-percent valuation factor that is tied to the time of year that valuation occurred (and also tied to the midpoint in the growing season, we assume), the crop should have been valued at $204,470. We have closely examined Rhonda's testimony on this point. She testified that there was a "variance" with respect to the value of the dryland and irrigated corn because John "only valued half the value rather than the entire value of the corn crop." That said, Rhonda was willing to use John's values of $2.30 per bushel and yield of 175 bushels per acre  just not the percentage reduction that John incorporated into his valuation that was adopted by the court. The foregoing is the extent of Rhonda's direct evidence with respect to the corn crop.
*716 In John's testimony, he conceded that the seed had been planted and that all chemicals, fertilizer, and herbicide had been applied prior to July 22, 2005. However, when asked on cross-examination whether his only expenses after July 22 would have been for "running the irrigation motors and hauling the crop to town," he disagreed, pointing out there was second-half cash rent on one farm, crop insurance premiums around $8,000, and an estimate of $10,000 for fuel, which we assume meant fuel for harvest. He also testified that the "Aurora Co-op" was paid in August for chemicals by a check for $48,000.
[13, 14] In summary, Rhonda would have us include in the marital estate the gross value of the 2005 corn crop and ignore all of the costs associated with planting it, fertilizing it, watering it, and harvesting it. In Blaser v. Blaser, 225 Neb. 104, 107, 402 N.W.2d 875, 877 (1987), the court emphasized that in dissolution matters, property divisions are not subject to a rigid mathematical formula and the "division must, most of all, be reasonable." Rhonda's position about valuation of the 2005 corn crop simply is not reasonable. This assignment of error is without merit. The evidence is undisputed that after July 22, 2005, Rhonda provided no help with irrigating, working with the cattle, or operating the farm equipment. Accordingly, after the trial court's valuation date, John was solely responsible for turning the 2005 growing crop into cash. And, the trial court did not err in rejecting Rhonda's claim that the 2005 corn crop be valued without regard to the cost of raising it.

Improvements to Inherited Property.
[15] Rhonda asserts that the trial court "erred in failing to consider improvements made to inherited property as a marital asset." Rhonda did not testify on this subject. John testified in response to a cross-examination question about improvements to the inherited real estate that in the fall of 2004, all trees were cleared off "the building site" at a cost of around $10,000, a new pivot was built in the spring of 2005 (although on what farm is not specified), and a storage bin was acquired. As we understand John's testimony, approximately $67,000 was spent for this work, which he said he paid for in 2005. The record does not specify whether the payment was before or after July 22, but it was financed via a note at the State Bank of Scotia.
The foregoing evidence is obviously sketchy at best. Nonetheless, the inescapable conclusion from the entire record is that if the note was paid before the divorce was filed, it was likely paid from John's inheritance, given that the parties did not appear to have substantial assets or cash until John's inheritance. Moreover, there is no evidence in the record to establish that the improvements John made to his inherited, and therefore separate, property increased such property's value over and above the cost of the improvements. Accordingly, on the sketchy record we have on this issue, we cannot say that the trial court abused its discretion in any way concerning this aspect of the property division.

CONCLUSION
Because successive and material changes were made to the decree of dissolution, the motions to alter or amend that were filed within 10 days of the "change orders" tolled the time to appeal to this court. Accordingly, we have jurisdiction over Rhonda's appeal. However, none of her assignments of error have merit.
AFFIRMED.