record, we find that the issue was not properly raised before the district court, either in the pleadings or at trial. Had the issue been raised at the trial court level, this court could address the issue on appeal, but it is well established that an issue not properly presented to and passed upon by the trial court may not be raised on appeal. See *Gebhardt v. Gebhardt*, 16 Neb. App. 565, 746 N.W.2d 707 (2008).

## CONCLUSION

In conclusion, based upon our de novo review of the record, we find that the district court's award of custody of Samantha to Elizabeth is in Samantha's best interests. We decline to address Aaron's assignment of error regarding the tax exemption because that matter was not properly presented to and passed upon by the trial court. However, we reverse the order of the district court allowing Elizabeth to leave the State of Nebraska with Samantha and remand the matter back to the district court for an appropriate retrial on the matter of removal based upon the record as it exists before this court. The district court's order regarding the parenting plan and child support is also reversed and the matter remanded to the district court for redetermination on the current record.

Affirmed in part, and in part reversed and remanded for further proceedings.

———————

State of Nebraska, appellee, v.
Jeffrey D. Glazebrook, appellant.
___ N.W.2d ___

Filed January 6, 2015.    No. A-13-781.

1. **Trial: Evidence: Appeal and Error.** A ruling on a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review.
2. **Criminal Law: Convictions: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

4. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

5. **Administrative Law: Statutes.** The authority to delegate discretionary and quasi-judicial powers to agency subordinates is implied where the powers bestowed upon an agency head are impossible of personal execution.

6. **Trial: Evidence: Appeal and Error.** Because overruling a motion in limine is not a final ruling on admissibility of evidence and therefore does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.

7. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

8. **Criminal Law: Directed Verdict.** In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.

9. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. **Effectiveness of Counsel: Proof.** To show prejudice on a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

11. ____: ____. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

12. **Effectiveness of Counsel: Presumptions: Appeal and Error.** The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.

13. **Trial: Attorneys at Law.** The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy.

14. ____: ____. A decision not to object could be explained by trial counsel's calculated strategy not to highlight the objectionable material.
15. **Trial: Attorneys at Law: Effectiveness of Counsel: Presumptions.** Trial counsel is afforded due deference to formulate trial strategy and tactics, and there is a strong presumption that counsel acted reasonably.
16. **Postconviction: Effectiveness of Counsel: Appeal and Error.** In the context of direct appeal, like the requirement in postconviction proceedings, mere conclusions of fact or law are not sufficient to allege ineffective assistance of counsel.
17. **Sentences: Words and Phrases: Appeal and Error.** An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
18. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

Moore, Chief Judge, and Pirtle and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

A jury found Jeffrey D. Glazebrook guilty of tampering with a witness and of terroristic threats. He was sentenced for the offenses, both felonies, and his sentences were enhanced by a finding that he was a habitual criminal. For the reasons that follow, we affirm.

## BACKGROUND

On November 16, 2011, Glazebrook was charged by information with two crimes: tampering with a witness, a Class IV felony, and terroristic threats, a Class IV felony. The information also alleged Glazebrook was a habitual criminal, as defined by Neb. Rev. Stat. § 29-2221 (Reissue 2008).

After a jury trial on August 30 and 31, 2012, Glazebrook was convicted of both tampering with a witness and terroristic threats. The district court held an enhancement hearing and found Glazebrook had been convicted of at least two prior felony convictions that satisfied the criteria for habitual criminal sentencing.

The charges in this case were derived from Glazebrook's alleged behavior during a prior criminal trial, with Glazebrook as the defendant. During the testimony of Charles Goodwin, an inmate witness, Glazebrook allegedly threatened Goodwin's life. At the trial on this matter, several witnesses, including four of the jurors and the county sheriff in attendance at the prior trial, testified. They stated that they saw Glazebrook mouth a threat toward Goodwin immediately after Goodwin had testified that Glazebrook had uttered an inflammatory statement; Goodwin had testified that Glazebrook had previously told him, "[T]here ain't no pussy like old pussy." This statement was the subject of a motion in limine filed by Glazebrook prior to the start of the trial. Glazebrook's motion was denied, and the statement attributed to Glazebrook was allowed to become a part of the record in this case.

David Herroon, one of the jurors in the prior trial, testified in this case that Glazebrook mouthed the words, "I will kill you," to Goodwin. Herroon testified to his ability to read lips because of his hearing loss, and he stated that he was certain that Glazebrook had mouthed those words to Goodwin. Herroon testified that he was shocked and stunned because he "had never thought something like that would happen and that [he] would witness it."

Saunders County Sheriff Kevin Stukenholtz testified that he was present at the prior trial and that the inmate witness testifying at the time of the alleged threat was Goodwin. Stukenholtz testified that he was approximately 22 feet from Glazebrook during Goodwin's testimony, during which he saw Glazebrook lean forward and "mouth something." He stated he was not in a position to see what was mouthed, but he noticed that Goodwin was visibly shaken and that his voice was cracking after he concluded his testimony and left the witness stand.

Danny Sabatka, another juror, testified that he observed Glazebrook mouthing the words "I'll kill you" to an inmate witness who was testifying. Sabatka testified Glazebrook's demeanor had changed and become "much more profound and directed towards that individual." Sabatka said this was the only time he noticed a change in Glazebrook's demeanor during the trial.

Two other jurors, John Brabec and Daniel O'Connor, testified that they witnessed a change in Glazebrook's demeanor during the testimony of an inmate witness. Brabec testified that Glazebrook's mouthed words, "I will kill you," toward the inmate witness were "obvious." Brabec stated that he was 100 percent certain of the statement Glazebrook had mouthed.

Prior to the trial, the jurors who testified were shown a video reenactment of Glazebrook making various statements, without sound. Herroon and Sabatka were not able to identify the words spoken in the video. Brabec testified that the statements he observed in the video did not resemble the statement mouthed in court. He said the way Glazebrook mouthed the statement in court was different from the way a person would move his or her mouth in normal conversation. Brabec described the mouthed statement in court as more enunciated, or exaggerated, than the statements on the video.

Herroon also testified that the statements on the video were different from what he witnessed as a juror. Herroon stated Glazebrook's mouthed statement in court was "very articulated . . . almost over the top enunciation, trying to get a point across." Herroon testified that Glazebrook was very agitated and was sitting "up in his seat with elbows puffed out, almost like attempting to try and look bigger, more threatening." In contrast, Glazebrook's demeanor in the video was very calm and the movements of his mouth were "almost conversational."

One of Glazebrook's attorneys from the previous case testified that the judge was concerned about eye contact between Goodwin and Glazebrook. He stated that the judge asked him to address that issue with Glazebrook, and he said that he did. He testified that the statement, "[T]here ain't no pussy like old pussy" was not a surprise at trial, because it

was in the pretrial reports and was brought up at the pretrial hearing.

After the defense rested, the matter was entrusted to the jury, which returned guilty verdicts on both charges. On September 21, 2012, Glazebrook filed a motion to dismiss alleging the district court for Sarpy County lacked subject matter jurisdiction. Glazebrook asserted the information was null and void because it was prepared, signed, filed, and verified by an assistant attorney general, not the Attorney General himself. A hearing on the matter was held on September 26. The State presented an affidavit executed by Nebraska's Attorney General indicating that the assistant attorney general was given the express, implied, and specific authority to submit the information on behalf of the State of Nebraska against Glazebrook. The district court's order, filed November 1, 2012, denied Glazebrook's motion to dismiss.

Glazebrook was sentenced on December 31, 2012, for the crimes of tampering with a witness and terroristic threats. The district court found Glazebrook to be a habitual criminal as there were at least two valid prior offenses which could be used for enhancement of the sentences. Glazebrook was sentenced to serve a term of 30 to 60 years' imprisonment on each count. The sentences were ordered to be served concurrently.

## ASSIGNMENTS OF ERROR

Glazebrook asserts the trial court erred in denying his motion to dismiss, his motion for directed verdict, and his motion in limine. He asserts the trial court abused its discretion in imposing excessive sentences. He also asserts that he received ineffective assistance of counsel and that the jury erred in finding there was sufficient evidence to return a guilty verdict.

## STANDARD OF REVIEW

[1] A ruling on a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review. See *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008).

[2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

[3] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra*.

[4] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

## ANALYSIS

*Motion to Dismiss*.

Glazebrook asserts the trial court did not have subject matter jurisdiction to proceed in this case under an information filed by an assistant attorney general, rather than the Attorney General, for the State of Nebraska. After the trial concluded, the jury returned guilty verdicts on August 31, 2012. This issue was raised for the first time in Glazebrook's motion to dismiss on September 21, 2012. A hearing was held on the motion to dismiss, and the court took judicial notice of the file, and the fact that Glazebrook did not file a motion to quash prior to entering his not guilty pleas.

The district court also received an affidavit from Nebraska's Attorney General. The affidavit stated that the assistant attorney general, in his official capacity within the Nebraska Department of Justice, had the Attorney General's "express and implied authority . . . to sign criminal pleadings, including Complaints and Informations, on behalf of the State of Nebraska." The affidavit also stated that the assistant attorney general had the Attorney General's specific authority to "sign and file the Information in the Saunders County District Court in Case Number CR11-76; and all other pleadings necessary to prosecute the related criminal matters against . . . Glazebrook."

The court found that Glazebrook could have filed a motion to quash, to address the alleged defects in the information. However, Glazebrook did not do so at any time prior to entering his "not guilty" pleas or following the entry of his pleas. He did not seek to withdraw his pleas or raise the issue of any alleged defect prior to this appeal. The district court ultimately found that Glazebrook had waived the alleged defects in the information, and it denied his motion to dismiss. The district court also found that the assistant attorney general had the authority to file the information, because Neb. Rev. Stat. § 84-204 (Reissue 2014) gives an assistant attorney general and the Department of Justice the same authority in each county as the county attorney.

[5] The court in *Fulmer v. Jensen*, 221 Neb. 582, 585, 379 N.W.2d 736, 739 (1986), applied the general principle of law that the "authority to delegate discretionary and quasi-judicial powers to agency subordinates is implied where the powers bestowed upon an agency head 'are impossible of personal execution.'" The evidence shows that the Attorney General delegated his authority to file the information against Glazebrook to the assistant attorney general. The Attorney General is authorized to appear for the State and prosecute and defend, in any court, any cause or matter, civil or criminal, in which the State may be a party or interested. Neb. Rev. Stat. § 84-203 (Reissue 2014). The statutes also state the Attorney General "shall appoint a deputy attorney general" who "may do and perform, in the absence of the Attorney General, all

the acts and duties that may be authorized and required to be performed by the Attorney General." Neb. Rev. Stat. § 84-206 (Reissue 2014). Thus, the Attorney General had the authority under the Nebraska statutes to delegate tasks to an assistant attorney general, and the record shows the assistant attorney general had specific authority from the Attorney General to file the information charging Glazebrook for the crimes of which he was convicted.

*Motion in Limine*.

Glazebrook asserts the trial court erred in denying his motion in limine, specifically regarding Stukenholtz' recollection of an inmate witness' statement in the previous criminal trial when Glazebrook was the defendant. The inmate witness, Goodwin, had testified at the previous trial that Glazebrook had told him, "[T]here ain't no pussy like old pussy," which allegedly implicated Glazebrook in the crime in the previous criminal trial.

In this case, following a hearing on the motions in limine, the court determined that the parties could not mention the crime Glazebrook was tried for in the previous case. However, the court found that Glazebrook's statement was not excluded, insofar as the State argued it was important that it be introduced for identity purposes and to show what caused Glazebrook's alleged reaction to Goodwin's testimony.

[6] A ruling on a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). Because overruling a motion in limine is not a final ruling on admissibility of evidence and therefore does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial. *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

During the trial in this case, Stukenholtz, the sheriff present at the prior criminal trial, was asked to repeat what Goodwin said that allegedly caused Glazebrook to react. Glazebrook's counsel objected, stating, "Not the best evidence. Lacking

sufficient foundation. Prejudicial." The trial court overruled the objection, and Stukenholtz stated, "Goodwin was quoting . . . Glazebrook and he said, there's no pussy like old pussy." Herroon also testified that he had heard the statement in the prior case which Glazebrook allegedly reacted to in court. When asked specifically what the statement was, Herroon said, "[H]e said, there's no pussy like old pussy." The defense did not object to this utterance. Similarly, Glazebrook's counsel did not object when the State used the statement in questions posed to the witnesses.

[7] Glazebrook acknowledges that there was one objection to the statement and no objection to the other occasions the statement was repeated at trial. Though Glazebrook's counsel objected once, he did not make a continuing objection or move to strike that statement from the rest of the record. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Cox*, 21 Neb. App. 757, 842 N.W.2d 822 (2014). Thus, we find Glazebrook has waived the right to argue the merits of the court's decision with regard to his motion in limine on appeal.

*Sufficiency of Evidence.*

Glazebrook asserts the evidence was insufficient to support a jury verdict as to the charge of tampering with a witness.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

The crime of tampering with a witness is defined by Neb. Rev. Stat. § 28-919(1) (Reissue 2008), which states:

A person commits the offense of tampering with a witness or informant if, believing that an official proceeding

or investigation of a criminal or civil matter is pending or about to be instituted, he or she attempts to induce or otherwise cause a witness or informant to:

(a) Testify or inform falsely;

(b) Withhold any testimony, information, document, or thing;

(c) Elude legal process summoning him or her to testify or supply evidence; or

(d) Absent himself or herself from any proceeding or investigation to which he or she has been legally summoned.

The jury instructions required the State to prove the material elements beyond a reasonable doubt, namely to show that on or about September 25, 2009, Glazebrook did intend to induce or otherwise cause a witness, Goodwin, to testify or inform falsely or to withhold testimony, information, documents, or things.

The evidence shows that Goodwin testified at a prior trial, in which Glazebrook was the defendant, on or about September 25, 2009, in Saunders County, Nebraska. Goodwin's testimony was not a flattering description of Glazebrook's character or behavior. Multiple witnesses testified that during Goodwin's testimony, they observed a change in Glazebrook's demeanor. Stukenholtz was present at the prior trial, during which Goodwin testified that Glazebrook had previously told him, "[T]here ain't no pussy like old pussy." Stukenholtz testified that he observed Glazebrook lean forward and mouth something to Goodwin. Stukenholtz further testified that he was not in a position to see what was mouthed, but he noticed that Goodwin was visibly shaken and that Goodwin's voice was cracking after he testified.

Sabatka, Brabec, and O'Connor, jurors from the prior trial, testified that they observed a change in Glazebrook's demeanor after Goodwin testified to Glazebrook's prior statement. They testified that Glazebrook focused intently on Goodwin, leaned forward, and mouthed words that were perceived to be a threat. Herroon, another juror from the prior trial, testified that he has hearing aids and that he looks at someone speaking to make sure that he understands what that person is saying.

Herroon testified that he was looking at Glazebrook during Goodwin's testimony and that Herroon, Sabatka, and Brabec all testified that the mouthed threat was "I will kill you" or "I'll kill you." Brabec testified that he had an unobstructed view of Glazebrook and was 100 percent certain that is what Glazebrook had communicated to Goodwin.

Brabec was asked to identify the statement mouthed by Glazebrook by viewing a video of Glazebrook saying other statements aloud, without sound. Brabec was not able to identify the statement he witnessed in court when it was shown on the video. However, Brabec testified that the statements he observed in the video did not resemble the statement mouthed in court. He said the way Glazebrook mouthed the statement in court was different from the way a person would move his or her mouth in normal conversation. Brabec described the statement mouthed in court as more enunciated, or exaggerated, than the statements on the video.

Herroon was also asked to view the video. He was unable to identify the alleged statement among the video-recorded statements, but testified that the statements were different from what he witnessed as a juror. Herroon stated Glazebrook's mouthed statement in court was "very articulated . . . almost over the top enunciation, trying to get a point across." Herroon testified that Glazebrook was very agitated and was sitting "up in his seat with elbows puffed out, almost like attempting to try and look bigger, more threatening." In contrast, Glazebrook's demeanor in the video was very calm and the movements of his mouth were "almost conversational."

Glazebrook emphasizes the fact that the jurors were not looking at Goodwin in the prior trial, but were looking at Glazebrook. He argues that none of the witnesses saw whether Goodwin reacted to Glazebrook's alleged mouthed threat. Glazebrook asserts "it is impossible to tamper with a witness with a statement that is never delivered to him." Brief for appellant at 41. However, the material elements of the crime do not require delivery of any statement to a witness. Rather, the statute requires only that a person attempt to induce or cause a witness to testify falsely, or to withhold his or her testimony or information. After viewing the evidence in the

light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We find this argument is without merit.

Glazebrook also asserts the trial court erred when it denied his motion for directed verdict.

[8] In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Having found that there was sufficient evidence to support the jury's finding of guilt, we find there was also sufficient evidence for the trial court to deny Glazebrook's motion for directed verdict. Thus, the trial court did not err.

*Ineffective Assistance of Counsel.*

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra.*

[9-12] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm, supra.* To show prejudice, the defendant must demonstrate a reasonable probability

that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Id*.

Glazebrook asserts trial counsel was ineffective because he failed to request a limiting instruction or object on each occasion the "no pussy like old pussy" statement was repeated at trial. Prior to trial, Glazebrook's counsel filed a motion in limine requesting that the State be precluded from presenting any evidence or comments to the jury regarding the specific testimony of the inmate witnesses, or the nature of the charges against Glazebrook, in the prior criminal trial. The State asserted the statement was relevant to show the identity of the speaker who made the statement at the prior trial and to show the intent of and motive for Glazebrook's reaction to the statement's being repeated in court. The trial court denied Glazebrook's motion to exclude the statement.

At trial, the statement was repeated multiple times: in the State's opening, by the State in questioning witnesses, and by Herroon and Stukenholtz, who were present at the prior trial when the statement was made. Glazebrook's counsel objected to the line of questioning in which Stukenholtz was asked to repeat what he heard Goodwin say in the prior trial, and the court overruled the objection. Trial counsel did not object to the other instances of the statement or ask for a limiting instruction. Glazebrook asserts on appeal that this "inflammatory statement" was highly prejudicial, brief for appellant at 49, and that counsel was ineffective for not making further efforts to prevent the repetition of the statement.

[13-15] The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy. *State v. Ruegge*, 21 Neb. App. 249, 837 N.W.2d 593

(2013). The Nebraska Supreme Court has previously discussed the notion that a decision not to object could be explained by trial counsel's calculated strategy not to highlight the objectionable material. *Id*. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). Trial counsel is afforded due deference to formulate trial strategy and tactics, and as stated above, there is a strong presumption that counsel acted reasonably. *State v. Ruegge, supra*, citing *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). Trial counsel in this case objected only once during trial to the statement, and it is not apparent from the record whether this was part of trial counsel's strategy. We find the record is insufficient for this court to determine whether counsel's failure to continue objecting to the statement constituted ineffective assistance of counsel.

Glazebrook asserts he received ineffective assistance of trial counsel for several additional reasons, all related to the speculative issue of whether additional witnesses could or would have provided favorable testimony to support his defense. Specifically, Glazebrook asserts trial counsel was deficient in (1) failing to hire an expert witness lipreader; (2) failing to take the deposition of the alleged victim, Goodwin; (3) failing to interview the remaining jurors from the prior criminal trial during which the alleged crimes were committed; and (4) failing to withdraw so he could testify as a witness about the events which took place during the prior trial.

[16] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). The determining factor is whether the record is sufficient to adequately review the question. *Id*. This is because the trial record reviewed on appeal is "'devoted to issues of guilt or innocence'" and does not usually address issues of counsel's performance. *Id*. at 769, 848 N.W.2d at 578. In the context of direct appeal, like the requirement in postconviction proceedings, mere conclusions of fact or law are not sufficient to allege ineffective assistance of counsel. *Id*.

The potential testimony of these witnesses is not part of the record on direct appeal, and Glazebrook recognizes that these

issues were likely not ripe for review by this court. We find the record is not sufficient to adequately review these remaining issues.

*Appropriateness of Sentences Imposed.*

[17] Glazebrook asserts the sentences imposed by the trial court were excessive. An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013). An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

The jury found Glazebrook was guilty of tampering with a witness, a Class IV felony, and terroristic threats, a Class IV felony. Under the Nebraska Revised Statutes, the sentences for both crimes are eligible to be enhanced by a determination that the individual is a habitual criminal. Section 29-2221(1) provides:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum of not more than sixty years[.]

The trial court reviewed the evidence of at least six felonies for which Glazebrook was charged, convicted, and sentenced to serve at least 1 year. Glazebrook does not dispute that he has six prior felony convictions, and there is little doubt that Glazebrook fits the definition of a habitual criminal. Instead, Glazebrook challenges the length of the term to which he was sentenced. He was sentenced to 30 to 60 years' imprisonment for each crime in this case, and his sentences were ordered to run concurrently.

Glazebrook asserts the trial court in this case has punished him not for the crimes of terroristic threats and tampering with a witness "but[,] instead, for the crimes he is alleged to have committed in the prior case which was reversed." Brief for appellant at 57. However, the trial court's remarks at the sentencing hearing do not suggest a focus on the prior reversal; rather, the trial court focused on Glazebrook's criminal record.

[18] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014).

The record shows the trial court considered Glazebrook's age, mentality, and criminal history; the instances of escape and attempted escape; and the violent offenses of burglary and sexual assault. The court acknowledged that some of Glazebrook's prior offenses were committed when he was a youth and perhaps were the product of an "undeveloped mind," but that Glazebrook was approximately 50 years old at the time he was convicted of these crimes. The court noted Glazebrook's record was one of the worst the court had seen and that the sentences imposed were necessary to "protect the integrity of the court." There is no evidence to support the argument that the trial court's sentences were intended to punish Glazebrook for the charges in the prior trial.

Glazebrook's sentences of 30 to 60 years' imprisonment, to run concurrently, are within the statutory limits. In light of his multiple previous felony convictions, the seriousness of these crimes, and the disrespect Glazebrook has demonstrated for legal process by committing these offenses in court, we find the trial court did not abuse its discretion.

## CONCLUSION

We find the trial court did not err in denying Glazebrook's motion in limine, motion for directed verdict, and motion to

dismiss. We find there was sufficient evidence to support the jury's verdict, and the trial court did not abuse its discretion in imposing sentences within the statutory limits. We find the record is insufficient to determine whether counsel's failure to maintain a continuing objection to the inflammatory statement constituted ineffective assistance of counsel. We find the record is also insufficient to determine whether Glazebrook received ineffective assistance of counsel with regard to the witnesses called to testify at trial.

AFFIRMED.

_____

STATE OF NEBRASKA, APPELLEE, V.
BETTY KELLOGG, APPELLANT.
___ N.W.2d ___

Filed January 6, 2015.    No. A-14-038.

1. **Investigative Stops: Motor Vehicles: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of the vehicle.
2. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants.
3. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** To expand the scope of a traffic stop and continue to detain the motorist, an officer must have reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference.
4. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.
5. **Police Officers and Sheriffs: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances.
6. **Probable Cause.** Reasonable suspicion must be determined on a case-by-case basis.